AO 93C (08/18) Warrant by Telephone or Other Reliable Electronic Means  ☑ Original  ☐ Duplicate Original



**CLERK'S OFFICE**
**A TRUE COPY**
Aug 08, 2024
s/ Mariah Kauder
Deputy Clerk, U.S. District Court
Eastern District of Wisconsin

# UNITED STATES DISTRICT COURT
for the
Eastern District of Wisconsin

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched*<br>*or identify the person by name and address)*<br>records and information associated with the cellular telephone assigned cell phone number 414-397-7949 ("Target Account 1") that are stored at premises controlled by T-Mobile ("the Provider"), headquartered at Parsippany, New Jersey. | Case No. 24-M-466 (SCD) |

## WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

To: Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests the search and seizure of the following person or property located in the __Eastern__ District of __Wisconsin__
*(identify the person or describe the property to be searched and give its location)*:

Please see Attachment A.

I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property described above, and that such search will reveal *(identify the person or describe the property to be seized)*:

Please see Attachment B.

**YOU ARE COMMANDED** to execute this warrant on or before __8-22-24__ *(not to exceed 14 days)*
☐ in the daytime 6:00 a.m. to 10:00 p.m.  ☒ at any time in the day or night because good cause has been established.

Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to __Honorable Stephen C. Dries__.
*(United States Magistrate Judge)*

☐ Pursuant to 18 U.S.C. § 3103a(b), I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized *(check the appropriate box)*
☐ for ____ days *(not to exceed 30)*  ☐ until, the facts justifying, the later specific date of _____.

Date and time issued: __8-8-24. 11:00 am__

*Judge's signature*

City and state: __Milwaukee, WI__    Honorable Stephen C. Dries, U.S. Magistrate Judge
*Printed name and title*

| Return | | |
|---|---|---|
| Case No.: | Date and time warrant executed: | Copy of warrant and inventory left with: |
| Inventory made in the presence of : | | |
| Inventory of the property taken and name(s) of any person(s) seized: | | |

**Certification**

    I declare under penalty of perjury that this inventory is correct and was returned along with the original warrant to the designated judge.

Date: _____

_____
*Executing officer's signature*

_____
*Printed name and title*

# ATTACHMENT A

**Property to Be Searched**

This warrant applies to records and information associated with the cellular telephone assigned cell phone number 414-397-7949 ("Target Account 1") that are stored at premises controlled by T-Mobile ("the Provider"), headquartered at Parsippany, New Jersey.

# ATTACHMENT B

## Particular Things to be Seized

I. **Information to be Disclosed by the Provider**

To the extent that the information described in Attachment A is within the possession, custody, or control of the Provider, including any information that has been deleted but is still available to the Provider or that has been preserved pursuant to a request made under 18 U.S.C. § 2703(f), the Provider is required to disclose to the government the following information pertaining to the Accounts listed in Attachment A for the time period from **October 1, 2022, through January 30, 2023:**

    a. The following subscriber and extended subscriber information about the customers or subscribers of the Accounts:

        i. Names (including subscriber names, user names, and screen names);

        ii. Addresses (including mailing addresses, residential addresses, business addresses, and e-mail addresses);

        iii. Local and long distance telephone connection records;

        iv. Records of session times and durations, and the temporarily assigned network addresses (such as Internet Protocol ("IP") addresses) associated with those sessions;

        v. Length of service (including start date) and types of service utilized;

        vi. Telephone or instrument numbers (including MAC addresses, Electronic Serial Numbers ("ESN"), Mobile Electronic Identity Numbers ("MEIN"), Mobile Equipment Identifier ("MEID"); Mobile Identification Number ("MIN"), Subscriber Identity Modules ("SIM"), Mobile Subscriber Integrated Services Digital Network Number ("MSISDN"); International Mobile Subscriber Identity Identifiers ("IMSI"), or International Mobile Equipment Identities ("IMEI"); device make and model;

        vii. Other subscriber numbers or identities (including the registration Internet Protocol ("IP") address); and

      viii. Means and source of payment for such service (including any credit card or bank account number) and billing records.

  b. All records and other information (not including the contents of communications) relating to wire and electronic communications sent or received by the Accounts, including:

      i. the date and time of the communication, the method of the communication, and the source and destination of the communication (such as the source and destination telephone numbers); call detail records for voice, SMS, MMS, and data; email addresses and IP addresses (including source and destination); and

      ii. information regarding the cell towers and sectors through which the communications were sent and received; and

      iii. per call measurement and timing advance data (PCMD, RTT, True Call, LOCDBOR, or similar)

**II.    Information to be Seized by the Government**

All information described above in Section I that constitutes evidence of violations of Title 18, United States Code, Sections 1951(a) and 924(c), involving known and unknown persons during the period from October 1, 2022, through January 30, 2023.



CLERK'S OFFICE
A TRUE COPY
Aug 08, 2024
s/ Mariah Kauder
Deputy Clerk, U.S. District Court
Eastern District of Wisconsin

# UNITED STATES DISTRICT COURT
## for the
## Eastern District of Wisconsin

In the Matter of the Search of
*(Briefly describe the property to be searched or identify the person by name and address)*

records and information associated with the cellular telephone assigned cell phone number 414-397-7949 ("Target Account 1") that are stored at premises controlled by T-Mobile ("the Provider"), headquartered at Parsippany, New Jersey.

Case No. 24-M-466 (SCD)

### APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

Please see Attachment A.

located in the **Eastern** District of **Wisconsin**, there is now concealed *(identify the person or describe the property to be seized)*:

Please see Attachment B.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:
- ☑ evidence of a crime;
- ☐ contraband, fruits of crime, or other items illegally possessed;
- ☐ property designed for use, intended for use, or used in committing a crime;
- ☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. 1951(a) | Hobbs Act Robbery |
| 18 U.S.C. 924(c) | Possession of a Firearm in furtherance of a Crime of Violence |

The application is based on these facts:
Please see Affidavit.

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days *(give exact ending date if more than 30 days: _____ )* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Applicant's signature*

Ian Byrne, Special Agent, FBI
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by **telephone** *(specify reliable electronic means)*.

Date: 8-8-24

*Judge's signature*

City and state: Milwaukee, WI

Honorable Stephen C. Dries, U.S. Magistrate Judge
*Printed name and title*

# AFFIDAVIT IN SUPPORT OF A
# AN APPLICATION FOR A SEARCH WARRANT

I, Ian Byrne, being first duly sworn, hereby depose and state as follows:

## INTRODUCTION AND AGENT BACKGROUND

1. I make this affidavit in support of an application for a search warrant for information associated with the following cell phone number 414-397-7949 (hereinafter "Target Account 1"). The information is stored at premises controlled by T-Mobile ("PROVIDER"), a wireless telephone service provider headquartered at Parsippany, New Jersey. The information to be searched is described in the following paragraphs and in Attachment A. This affidavit is made in support of an application for a search warrant under 18 U.S.C. § 2703(c)(1)(A) to require T-Mobile to disclose to the government copies of the information further described in Section I of Attachment B. Upon receipt of the information described in Section I of Attachment B, government-authorized persons will review the information to locate items described in Section II of Attachment B.

2. I am a Special Agent with the Federal Bureau of Investigation (FBI) and have been since December 2021. Prior to my employment with the FBI, I was an active-duty U.S. Army soldier for approximately nine years. I am currently assigned to the FBI's Milwaukee Area Violent Crimes Task Force. This Task Force is a multi-jurisdictional law enforcement entity charged with investigating violations of federal law, including violent and threatening criminal matters defined under Title 18 of the United States Code. I have been trained in a variety of investigative matters to include bank robberies, armed carjackings, threatening communication, and Hobbs Act robberies. I have also been trained in a variety of legal matters, including the topics of Fourth Amendment searches, the drafting of search warrant affidavits, and probable cause. I have assisted in criminal investigations, participating in surveillance, searches, interviews, and debriefs of

arrested subjects. As a result of this training and investigative experience, I have learned how and why criminal actors typically conduct various aspects of their criminal activities.

3. The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents, officers and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

4. Based on the facts set forth in this affidavit, there is probable cause to believe that violations of 18 U.S.C. § 1951(a), Hobbs Act robbery, and 18 U.S.C. §924(c), Use of a Firearm during a Crime of Violence, have been committed by known and unknown persons. There is also probable cause to search the information described in Attachment A for evidence of these crimes as further described in Attachment B.

## SUMMARY OF PROBABLE CAUSE

5. The Federal Bureau of Investigation ("FBI") and Milwaukee Police Department ("MPD") are currently investigating an armored truck armed robbery, which occurred on or about January 26, 2023, at 7927 West Capitol Drive, in Milwaukee, Wisconsin.

6. On January 26, 2023, at approximately 8:10 a.m., employees of Thillens armored truck company were robbed while servicing the Automated Teller Machine (ATM) located at North Shore Bank, 7927 West Capitol Drive, in Milwaukee. The robbery discussed herein affected interstate and foreign commerce.

7. Three Thillens employees were assigned to the armored truck when it was servicing the ATM. Two of the employees, J.D. and S.B., were inside the armored truck. The third Thillens employee, identified as R. C.-N., was servicing the ATM during the armed robbery. The armored truck was parked on the south side of North Shore Bank, just to the

2

southwest of the ATM. To the south of where the armored truck was parked was an alley that runs east and west, between 79th and 80th Streets, and continues in both directions.

8. Surveillance video obtained from North Shore Bank showed that at approximately 8:13 a.m., a black Dodge Durango, drove westbound down the alley toward the ATM, and stop beside it. Two individuals exited the Durango from the front and rear passenger doors. The front passenger was a black male, tall and thin, wearing a black North Face jacket with small white logo on the front and back of the jacket, black pants, blue surgical gloves, black mask, black shoes, and armed with a black, semiautomatic handgun. The rear passenger was a black male, wearing blue surgical gloves, white mask, white shoes, black pants, and carried a black "Draco" style black firearm with a large capacity magazine.

9. The two subjects pointed their firearms at R. C.-N. and did not say anything. The front passenger ran up to the ATM and grabbed a bag containing $134,500.00 of U.S. currency. The front and rear passenger then got back into the Durango, and the vehicle fled westbound down the alley, before turning southbound on 80th Street and driving out of sight.

10. Milwaukee Police Department (MPD) and the Federal Bureau of Investigation (FBI) responded to the scene of the armed robbery.

11. Based on victim interviews with the armored truck employees, two suspicious vehicles were noted on January 17, 2023, at approximately 8:00 a.m. The vehicles were parked with engines running while Thillens employees, using an armored truck, serviced the ATM at a different the North Shore Bank located at 10600 W Silver Spring Dr, Milwaukee, Wisconsin.

12. In addition, on January 21, 2023, at approximately 10:03 a.m., a Milwaukee Police Department Computer Aided Dispatch (CAD) was created when a complainant caller reported a suspicious vehicle at the North Shore Bank ATM, located at 10600 West Silver Spring

Drive, in Milwaukee. The complainant caller stated that the suspicious vehicle was occupied and had been parked by the ATM for two hours. The caller also stated that there was also a second suspicious vehicle parked near the ATM.

13. Based on victim interviews with the armored truck employees, the armored truck makes the same weekly route. The first stop is at the North Shore Bank ATM, located at 10600 W Silver Spring Drive, in Milwaukee. The second stop is at the North Shore Bank ATM, located at 7927 West Capitol Drive, in Milwaukee. The approximate times of each stop, the order of the locations serviced, and the routes between the locations are very routine.

14. During a canvass of the surrounding area by the responding MPD officers, the bag that contained the stolen money was recovered in the street in front of 38XX North 80th Street. The bag was dark in color and had two handles with the words "Thillens Cagistics" printed on the bag. Inside the bag were rubber bands, some of which were broken, as well as a $2,000 money band.

15. During the investigation, a review of the North Shore Bank surveillance cameras revealed that the suspect vehicle from the offense was identified as a black, newer model Dodge Durango, with dark tinted windows and no registration plates. While canvassing the area, the Durango was found parked and abandoned behind 39XX North 76th Street. Inside the vehicle were several rubber bands, consistent with the rubber bands that were recovered from the money bag taken in the armed robbery.

16. The Dodge Durango had VIN # 1C4RDJDG8HC820426. A check of the VIN revealed that the vehicle was reported stolen to the Sheboygan Police Department on October 10, 2022. The Dodge Durango was a 2017, GT model, with the current registered owner being the American Family Mutual Insurance Company.

17. Surveillance video obtained from the BP gas station located at 7311 W Capitol Drive, showed that at approximately 8:08 a.m., a black Dodge Durango and a grayish Kia Sorento can be seen driving south on North 72nd Street and turn westbound on to West Capitol Drive.

18. Surveillance video obtained from the Shell gas station located at 7609 W Capitol Drive, showed a black Dodge Durango followed by a grayish Kia Sorento traveling westbound on West Capitol Drive and turning southbound on North 76th Street at approximately 8:10 a.m.

19. Surveillance video obtained from Milwaukee County Transit System (MCTS) busses showed that at approximately 8:10 a.m., a black Dodge Durango and a grayish Kia Sorento can be seen turning west into the alley where the Durango was ultimately recovered.

20. Surveillance video obtained from 3934 N 77th Street showed that at approximately 8:14 a.m., a grayish in color, Kia Sorento, went southbound down the alley west of 39XX N 76th Street, where the Durango was parked. In the footage, though the Durango is not visible, the Sorento stops approximately next to where the Durango was located. Car doors are audibly being slammed, and then the Sorento proceeds south down the alley toward W Melvina Street.

**Walgreens Robberies and July 13, 2023 Armored Truck Robbery**

21. During the course of investigating a series of Walgreens robberies beginning in June 2023, and continuing until July 10, 2023, and another armored truck robbery at the same location described above, 7927 West Capitol Drive in Milwaukee, that involved the shooting of S.B. on July 13, 2023, law enforcement identified Target Account 1 (cell phone number 414-397-7949), which contained International Mobile Subscriber Identity (IMSI) 310240242811173,

5

as a cell phone of interest. On July 25, 2023, S.B. died as a result of his injuries from the shooting.

22. Subsequently, further investigation revealed that Colby Logan (DOB XX/XX/1992) was the user of Target Account 1. Further investigation revealed that Target Account 1 was in the vicinity of five Walgreens robberies and the July 13, 2023 armored truck robbery/shooting, around the time of the robberies. Additional investigation revealed that prior to several of the robberies, Target Account 1 was in contact with Target Account 2 (phone number 414-275-0927). On or about July 19, 2023, Damien Huff (DOB XX/XX/1994) was arrested. Huff was in possession of a phone, identified as Target Account 2, and a firearm, a Hi-Point 9mm. The firearm is not believed to be the same firearm used to shoot S.B. on July 13, 2023.

23. A federal cell tower dump order and a search warrant for Timing Advance Area Search were obtained with respect to the armored truck robbery on January 26, 2023. A review of previously obtaining information in the Timing Advance Area Search was reviewed to see if the unique account identifier, specifically International Mobile Subscriber Identity (IMSI) 310240242811173 associated with Target Account 1, was within any of the search results that were conducted at that time. The search identified that the IMSI 310240242811173, which is associated with Target Account 1, was located within the search of devices in the area of and around the January 26, 2023 armored truck robbery. Specifically, the raw data reviewed showed records consistent with travel to the area of the crime scene, activity in and around the area, and then travel away from the crime scene based on the timeline that was previously developed.

24. Therefore, based on Target Account 1 being identified as associated with Colby Logan, and having location information consistent with being at multiple armed robberies,

including that of armored truck robberies on January 26, 2023, and July 13, 2023, I submit that there is probable cause to obtain additional historical records to identify the numbers Target Account 1 (cell phone number 414-397-7949) contacted before, after, and around the January 26, 2023 armored truck robbery as well as travel of the device including the period around when the Dodge Durango utilized during the robbery was reported stolen in Sheboygan, Wisconsin, on or about October 10, 2022.

25. It is common for cell phones to be used in robbery incidents, often between co-actors or to otherwise assist in the facilitation of the crime(s). In this instance, there are multiple different locations separated by sufficient time and distance that can be associated with the suspects in the above-described incidents. If common phone numbers can be developed between multiple incidents, this could lead to the identification of one or more of the suspects.

26. Based on my training and experience, individuals carry their cellular phones on their person or in a very close vicinity whether it is day or night. Further, most individuals have their own cellular phones, so it is likely the subject(s) cellular phone is using and/or registering with the cellular tower providing service in the general geographic area of the crime.

27. Based on my training and experience, I believe that there are reasonable grounds to believe that historical call detail records for Target Account 1, for the period from October 1, 2022, through January 30, 2023, are relevant and material to the ongoing investigation. Among other things, law enforcement officers can use historical call detail records to analyze the past use of Target Account 1 and thereby obtain information about the subjects' co-conspirators, associates, and activities, as well as patterns of behavior. In particular, information about the past use of Target Account 1 is likely to enable the government, by matching call details with the cell

site information discussed below, to determine Logan's whereabouts or his possible contact with others, including other suspects, leading up to, and following, the Subject Offenses.

28. In my training and experience, I have learned that T-Mobile is a company that provides cellular telephone access to the general public. I also know that providers of cellular telephone service have technical capabilities that allow them to collect and generate information about the locations of the cellular telephones to which they provide service, including cell-site data, also known as "tower/face information" or "cell tower/sector records." Cell-site data identifies the "cell towers" (i.e., antenna towers covering specific geographic areas) that received a radio signal from the cellular telephone and, in some cases, the "sector" (i.e., faces of the towers) to which the telephone connected. These towers are often a half-mile or more apart, even in urban areas, and can be 10 or more miles apart in rural areas. Furthermore, the tower closest to a wireless device does not necessarily serve every call made to or from that device. Accordingly, cell-site data provides an approximate location of the cellular telephone but is typically less precise than other types of location information, such as E-911 Phase II data or Global Positioning Device ("GPS") data.

29. Based on my training and experience, I know that T-Mobile can collect cell-site data about Target Account 1. I also know that wireless providers such as T-Mobile typically collect and retain cell-site data pertaining to cellular phones to which they provide service in their normal course of business in order to use this information for various business-related purposes.

30. Based on my training and experience, I know that wireless providers such as T-Mobile typically collect and retain information about their subscribers in their normal course of business. This information can include basic personal information about the subscriber, such as

8

Case 2:24-mj-00466-SCD    Filed 08/08/24    Page 14 of 18    Document 1

name and address, and the method(s) of payment (such as credit card account number) provided by the subscriber to pay for wireless telephone service. I also know that wireless providers such as T-Mobile typically collect and retain information about their subscribers' use of the wireless service, such as records about calls or other communications sent or received by a particular phone and other transactional records, in their normal course of business. In my training and experience, this information may constitute evidence of the crimes under investigation because the information can be used to identify Target Account's user or users and may assist in the identification of co-conspirators and/or victims.

# ATTACHMENT A

**Property to Be Searched**

This warrant applies to records and information associated with the cellular telephone assigned cell phone number 414-397-7949 ("Target Account 1") that are stored at premises controlled by T-Mobile ("the Provider"), headquartered at Parsippany, New Jersey.

# ATTACHMENT B

## Particular Things to be Seized

I. **Information to be Disclosed by the Provider**

To the extent that the information described in Attachment A is within the possession, custody, or control of the Provider, including any information that has been deleted but is still available to the Provider or that has been preserved pursuant to a request made under 18 U.S.C. § 2703(f), the Provider is required to disclose to the government the following information pertaining to the Accounts listed in Attachment A for the time period from **October 1, 2022, through January 30, 2023:**

    a. The following subscriber and extended subscriber information about the customers or subscribers of the Accounts:

        i. Names (including subscriber names, user names, and screen names);

        ii. Addresses (including mailing addresses, residential addresses, business addresses, and e-mail addresses);

        iii. Local and long distance telephone connection records;

        iv. Records of session times and durations, and the temporarily assigned network addresses (such as Internet Protocol ("IP") addresses) associated with those sessions;

        v. Length of service (including start date) and types of service utilized;

        vi. Telephone or instrument numbers (including MAC addresses, Electronic Serial Numbers ("ESN"), Mobile Electronic Identity Numbers ("MEIN"), Mobile Equipment Identifier ("MEID"); Mobile Identification Number ("MIN"), Subscriber Identity Modules ("SIM"), Mobile Subscriber Integrated Services Digital Network Number ("MSISDN"); International Mobile Subscriber Identity Identifiers ("IMSI"), or International Mobile Equipment Identities ("IMEI"); device make and model;

        vii. Other subscriber numbers or identities (including the registration Internet Protocol ("IP") address); and

      viii. Means and source of payment for such service (including any credit card or bank account number) and billing records.

  b. All records and other information (not including the contents of communications) relating to wire and electronic communications sent or received by the Accounts, including:

      i. the date and time of the communication, the method of the communication, and the source and destination of the communication (such as the source and destination telephone numbers); call detail records for voice, SMS, MMS, and data; email addresses and IP addresses (including source and destination); and

      ii. information regarding the cell towers and sectors through which the communications were sent and received; and

      iii. per call measurement and timing advance data (PCMD, RTT, True Call, LOCDBOR, or similar)

## II. Information to be Seized by the Government

All information described above in Section I that constitutes evidence of violations of Title 18, United States Code, Sections 1951(a) and 924(c), involving known and unknown persons during the period from October 1, 2022, through January 30, 2023.